STEVEN P. GOULD
(Defendant appearing *pro se*)
*Gouldsteven05@gmail.com*
HCR 20, Box 1586
Blythe, California 92225
TEL: (760) 808-4943




**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

STEVEN P. GOULD,

Defendant.

Case No.: 5:23-cv-02295-FMO-SPx

ASSIGNED FOR ALL PURPOSES TO:

DIST. JUDGE: HON. FERNANDO M. OLGUIN
MAG. JUDGE: SHERRI PYM

**DEFENDANT STEVEN P. GOULD'S RESPONSE TO MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS BY PLAINTIFF UNITED STATES**

**[Fed. R. Civ. P. 12(c)]**

**Hearing Date: May 30, 2024**
**Hearing Time: 10:00 a.m.**

Action Filed: November 7, 2023
Scheduling Conf: April 4, 2024
Final PT Conf: November 29, 2024
Trial Date: December 16, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………ii

INTRODUCTION………………………………………………………………………1

I. CONTEXT OF THE CASE……………………………………………………..1

II. BACKGROUND OF THE RESERVATION BOUNDARY DISPUTE…………..2

III. 1964 FEDERAL LEGISLATION AUTHORIZES LEASING OF TRIBAL LANDS BUT EXCLUDES DISPUTED AREA…………………………………...3

IV. 1969 SECRETARIAL ORDER PURPORTS TO INCLUDE DISPUTED AREA IN RESERVATION……………………………………………………..4

V. *ARIZONA II* – SUPREME COURT DETERMINES THAT THE 1969 SECRETARIAL ORDER DOES NOT RESOLVE RESERVATION BOUNDARY DISPUTE……………………………………………………...4

VI. *ARANSON* – NINTH CIRCUIT EMPLOYS RIPARIAN THEORY IN ANALYZING RESERVATION BOUNDARY……………………………………4

VII. 1993 – ANOTHER SPECIAL MASTER FINDS THE RESERVATION WESTERN BOUNDARY TO BE RIPARIAN……………………………………5

VIII. *ARIZONA v. CALIFORNIA* – 1999 SETTLEMENT LEAVES BOUNDARY DISPUTE UNRESOLVED…………………………………………………………5

IX. *ARIZONA III* – SUPREME COURT RECOGNIZES THAT THE RESERVATION BOUNDARY DISPUTE IS UNRESOLVED BY THE SETTLEMENT……………………………………………………………………..6

X. THE 1969 SECRETARIAL ORDER DID NOT, AND DOES NOT, RESOLVE THE DISPUTE OVER THE RESERVATION WESTERN BOUNDARY……………………………………………………………………….6

OPPOSITION TO PLAINTIFF'S ARGUMENTS…………………………………..8

A. Defendant is Not in Trespass and Subject to Ejectment……………………8

B. Defendant's Defenses are Not Meritless…………………………………..11

LEGAL STANDARD…………………………………………………………………13

CONCLUSION………………………………………………………………………..13

# TABLE OF AUTHORITIES

## Cases

*Arizona v. California,* 373 U.S. 546 (1963) (*Arizona I)*……………………………4, 6, 7

*Arizona v. California*, 460 U.S. 605, 636-37 (1982) (*Arizona II*)……………….. 4, 7, 9, 10

*Arizona v. California*, 530 U.S. 392 (2000) (*Arizona III*)……………………………6, 6, 9

*Colorado River Indian Tribes v. Blythe Boat Club (2010), (CRIT Tribal Court Case CV-CO-2010-0083; CRIT Appeal Court Case No. 11-0002)*……………………………2

*Colorado River Indian Tribes v. S.M.R. Jewell, Secretary of the Interior (U.S. District Court, District of Columbia No. 06-cv-02212)*……………………………1

*French v. Starr,* No. CV-13-02153, 2015 WL 1252104 (D. Ariz. February 12, 2015)…………………………………………...9, 10, 14

*Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,* 896 F.2d 1542, 1550,(9th Cir. 1990)……………………………………………..13

*Turley v. Eddy,* Fed.Appx. 934, 2003 WL 21675511 (9th Cir. July 16, 2003)………………………………………………..........2

*United States v. Aranson,* 696 F.2d 654 (9th Cir. 1983) ………………………4, 5, 6, 7, 8

*Water Wheel Recreational Area, Inc. v. La Rance*, 642 F.3d 802 (9th Cir. 2011)…………………………………………...….2, 7, 8

*West Bank Homeowners Association v. County of Riverside, RIverside County Sheriff's Department: Sheriff Stanley Sniff*…………………...……...2, 15

## Statutes

28 U.S.C. § 2415(a)……………………………………………………………..13

28 U.S.C. § 2415(c)……………………………………………………………..13

43 U.S.C. § 1068……………………………………………………………..…..9

Act of April 30, 1964, Public Law 88-302, 78 Stat. 188………3, 6, 8, 9, 10, 11, 12, 13, 14

*Federal Rules of Civil Procedure*, Rule 12(c)…………………………………...……...13

# INTRODUCTION

## I. CONTEXT OF CASE

It would appear that this case is merely about the United States, as trustee for the Colorado River Indian Tribes, asserting authority over a long-term resident who has refused to pay rent for the use of reservation land over many years. Indeed, the Colorado River Indian Tribes (CRIT) and their trustee, the United States, wish to reduce this matter to such a simple discourse.

But the reality is that this case is about CRIT establishing control over an entire disputed area where to date, the United States runs from addressing the premises upon which it alleges authority over Defendant and hundreds of other similarly situated non-tribal member citizens. In so doing, the United States seeks to perpetuate a misrepresentation to this Court and to all others by its claims that the courts have determined that the "Western Boundary lands" are indeed tribal land and that the boundary dispute was resolved years ago. This case is about the U.S. attempting to stifle efforts by anyone challenging its claim that the reservation's western boundary has been finally determined. It is about using intimidation to suppress facts in order to support its claims, while ignoring relevant and compelling facts to the contrary. It is about eliminating any non-Indian resident who would dare stand up to the United States government.

The United States' motivation isn't hard to find. With a little research it can be found in the periodic lawsuits filed against the U.S. by the Tribes. One only needs to look as far as the $45 million dollar settlement awarded to CRIT for supposed mismanagement of non-monetary trust assets in *Colorado River Indian Tribes v. S.M.R. Jewell, Secretary of the Interior* (U.S. District Court, District of Columbia No. 06-cv-02212).

What better way for CRIT and their trustee to intimidate and coerce 200 West Bank families into signing leases that include tribal jurisdiction which waives their U.S. constitutional rights? And if the residents don't consent to tribal

jurisdiction and CRIT's sovereign immunity, CRIT, now with the help of its trustee, simply forces them from their homes, even though many have been on the land for three and sometimes four generations, long before the United States government even suggested that it might be Indian land.

But it is no matter to CRIT, as they have shown nothing but hostility and contempt for West Bank residents since the infamous 1969 Secretarial Order. CRIT's hostility was clearly demonstrated by the 2011 ejection of the Blythe Boat Club which had claims to their property back to 1947 (*Colorado River Indian Tribes v. Blythe Boat Club)*, of Red Rooster where CRIT burned down 27 mobile homes in that 2000 eviction, of Paradise Point where CRIT destroyed the electrical service to 22 homes in 2001 (*Turley v. Eddy*, Fed.Appx. 934, 2003 WL 21675511 (9th Cir. July 16, 2003)) making the homes uninhabitable, of Ron Jones in 2010 where CRIT confiscated his boat then later his mobile home (*West Bank Homeowners Association v. County of Riverside, Riverside County Sheriff's Department: Sheriff Stanley Sniff*), and of Robert Johnson who built them a beautiful multi-million dollar resort only to find himself now without a business and in financial ruin (*Water Wheel Recreational Area, Inc. v. La Rance*, 642 F.3d 802 (9th Cir. 2011).

## II. BACKGROUND OF THE RESERVATION BOUNDARY DISPUTE

The United States brought forth this motion to eject Defendant from his home, Lot 16 in the Rymer Subdivision ("Subject Property"), which he has occupied as his main residence since 2004.

On December 26, 1979, the Colorado River Indian Tribes issued Permit WB-67R to Defendant's parents, James A. Gould and Sharon Gould. From 1979 through 1992, James and Sharon Gould paid the annual rent due under the Permit. In 1993, they stopped making complete payments when they became aware of a boundary dispute between the United States (now representing Colorado River Indian Tribes) and the State of California, stemming from a Secretarial Order issued in 1969 that attempted to resolve the boundary dispute in the Tribe's favor, albeit ex-parte.

In 2004, Defendant's father JamesA. Gould transferred to Defendant Steven P. Gould his interest in the residence on the Subject Property. Defendant has resided on the Subject Property since 2004, but he has never signed a new Permit and never paid "back rent" to the Colorado River Indian tribes or to any entity.

Defendant here asserts that the CRIT western boundary dispute has never been resolved in accordance with Public Law 88-302, 78 Stat. 188, and therefore the Secretary of the Interior's leasing authority is not authorized in the disputed area unless and until the dispute is resolved in CRIT's favor. Therefore, the Court should deny the U.S. Motion for Partial Judgment on the Pleadings because the State of California's continuing challenge to the Secretarial Order in conjunction with Public Law 88-302 more than plausibly shows that the Secretary has no authority to lease lots in the disputed area, including the subject Lot.

## III. 1964 FEDERAL LEGISLATION AUTHORIZES LEASING OF TRIBAL LANDS BUT EXCLUDES DISPUTED AREA

In 1964, Congress passed Public Law 88-302, which authorized the Secretary of the Interior to approve leases of Reservation land, contained the following proviso limiting the authority to lease land in Section 5:

> That the authorization [to lease Indian lands] herein granted to the Secretary of the Interior *shall not extend to any lands lying west of the present course of the Colorado River and south of section 25 of township 2 south, range 23 east, San Bernardino base and meridian in California,* and shall not be construed to affect the resolution of any controversy over the location of the boundary of the Colorado river Reservation: Provided further, *That any of the described lands in California shall be subject to the provision of this Act when and if determined to be within the reservation*.

78 Stat. 188 (emphasis added). The language contained above in Public Law 88-302, excepting from the Secretary of the Interior's leasing authority land west of the Colorado and south of section 25 of township 2 south, range 23, San Bernardino base and meridian, precluded leasing in the disputed area until the dispute was resolved.

/ / /

## IV. 1969 SECRETARIAL ORDER PURPORTS TO INCLUDE DISPUTED AREA IN RESERVATION

In 1969, the Solicitor for the Department of the Interior ("Solicitor") interpreted the events to that date and issued an opinion that the Reservation included the land on the California side of the Colorado that was set forth in the 1874 Executive Order. The Solicitor's opinion stated that the 1876 Executive Order established the ordinary high water line of the west bank to be the Reservation boundary. Based upon his analysis, the Solicitor went on to opine that the ordinary high-water mark of the Colorado as it existed in 1876, the so-called "meander line," was the current boundary of the CRIT Reservation.

## V. *ARIZONA II* – SUPREME COURT DETERMINES THAT THE 1969 SECRETARIAL ORDER DOES NOT RESOLVE RESERVATION BOUNDARY DISPUTE

The United States Supreme Court, commenting on the 1969 Secretarial Order in *Arizona v. California*, 460 U.S. 605, 636-37 (1982) (*Arizona II*), acknowledged and declined to decide the boundary dispute:

> In [*Arizona I*], when we set aside Master Rifkind's boundary determinations as unnecessary and referred to possible future final settlement, *we in no way intended that ex parte secretarial determinations of the boundary issues would constitute "final determinations" that could adversely affect the States…."*

Id. (emphasis added). In *Arizona II*, the Supreme Court, thus, clearly stated its view that the 1969 Secretarial Order was *not* a final determination of the boundary dispute.

## VI. *ARANSON* – NINTH CIRCUIT EMPLOYS RIPARIAN THEORY IN ANALYZING RESERVATION BOUNDARY

The Ninth Circuit in *United States v. Aranson*, 696 F.2d 654 (9th Cir. 1983) (*Aranson*), addressed the Reservation boundary in the context of a dispute over the ownership of certain parcels on the California side of the Colorado. In *Aranson*, the

United States – as trustee for CRIT – clearly asserted a riparian Reservation boundary. The assertion was reflected as follows:

> *Hence, if a river forming the boundary between the properties of two upland owners changes its course by a gradual process of erosion from one bank and accretion to the other, the boundary moves with the river.*

Adopting the United States' assertion, *Aranson* thus applied a riparian theory in determining the Reservation boundary. But the 1969 Secretarial Order, which the United States now contends to be the final and unchallengeable resolution of the Reservation boundary dispute, utilized a *fixed line* theory of the boundary, directly in opposition to the riparian interpretation of "west bank", was not even mentioned or considered in *Aranson*.

**VII. <u>1993 – ANOTHER SPECIAL MASTER FINDS THE RESERVATION WESTERN BOUNDARY TO BE RIPARIAN</u>**

In 1990, the United States Supreme Court appointed another special master, Frank McGarr, who determined that the boundary of the Reservation did not include the disputed area, coming to the same conclusion as Special Master Rifkind -- that the Reservation's western boundary is riparian.

**VIII. <u>*ARIZONA v. CALIFORNIA* – 1999 SETTLEMENT LEAVES BOUNDARY DISPUTE UNRESOLVED</u>**

In 1999, California entered into a stipulated settlement with the United States and CRIT in *Arizona v. California*, 530 U.S. 392 (2000) (*Arizona III*). The stipulation left the Reservation boundary dispute unresolved, stating in pertinent part:

> *Disputed Boundary.*
> *The parties agree not to seek adjudication in this phase of the litigation of the validity, correctness, or propriety of the January 17, 1969 Order of the Secretary of the Interior, Western boundary of the Colorado River Indian Reservation…"*

///

///

**IX. *ARIZONA III* – SUPREME COURT RECOGNIZES THAT THE RESERVATION BOUNDARY DISPUTE IS UNRESOLVED BY THE SETTLEMENT**

In approving Special Master McGarr's recommendation regarding California and the United States' settlement agreement on CRIT's water rights, the Court further states:

> *The Master has also recommended that the Court approve the parties proposed settlement of the dispute respecting the Colorado River Indian Reservation. ... The parties agreed to resolve the matter through an accord that (3) embodies the parties' intent not to adjudicate in these proceedings the correct location of the disputed boundary. ..... The Master expressed concern that the settlement does not resolve the location of the disputed boundary…*

Here again the Supreme Court has expressly recognized that the "controversy over the location of the boundary of the Colorado river Reservation" was not resolved.

**X. THE 1969 SECRETARIAL ORDER DID NOT, AND DOES NOT, RESOLVE THE DISPUTE OVER THE RESERVATION WESTERN BOUNDARY**

The linchpin of the United States' argument is that the 1969 Secretarial Order finally resolved the boundary dispute, and it cannot now be challenged. That position contradicts federal law, the United States Supreme Court's multiple statements on the exact issue, and the position that the United States itself took in *Aranson*.

In *Arizona I,* Special Master Rifkind persuasively opined that the 1876 Executive Order established a riparian boundary on the Reservation's western side that excluded the disputed area from the Reservation. In Public Law 88-302, Congress expressly excluded the disputed area from the Secretary of the Interior's leasing authority. Nonetheless, in a unilateral admirative action in 1969, the

Secretary of the Interior attempted to expand the Reservation beyond the terms of the 1876 Executive Order to include the disputed lands.

In *Arizona II,* the Supreme Court disapproved of the 1969 Secretarial Order as the resolution of the dispute, stating "[i]n [*Arizona I*], when we set aside Master Rifkind's boundary determinations as unnecessary and referred to possible future final settlement, *we in no way intended that ex parte secretarial determinations of the boundary issue would constitute "final determinations" that could adversely affect the States, their agencies, or private water users…". Arizona II,* 460 U.S. at 636 (emphasis added).

Moreover, in *Aranson*, which was decided after *Arizona II*, the Ninth Circuit predicated its decision on the Reservation's western boundary being riparian. *Aranson*, 696 F.2d at 659-60. The Court also expressly held that the Colorado's riverbed was not part of the Reservation, effectively establishing the river's east bank as the Reservation's western boundary. *Aranson*, 696 F.2d at 666. These holdings directly contradict the 1969 Secretarial Order, and the United States assertions in this action.

The United States relies heavily upon *Water Wheel Camp Recreational Area, Inc. v. LaRance*, 642 F.3d 802 (9th Cir. 2011) (*Water Wheel*) to suggest that the Reservation boundary dispute has been resolved in CRIT's favor. The district court in *Water Wheel* was very clear that the case did not involve a challenge to the "title or reservation of the land," and that if the court were to address that issue the case would be dismissed based upon tribal sovereign immunity. Even though the status of the land had not been put at issue in the case, the Ninth Circuit in *Water Wheel* appears to have based its decision on its belief that the property at issue was part of the "reservation" or "tribal land." *Water Wheel,* 642 F.3d at 812-13. Therefore, at most the expansive language implying that the disputed area is part of the Reservation simply reflects an assumption between the parties in the case, and constitutes nothing more than dictum. Moreover, California was not a party to

*Water Wheel,* thus cannot be bound by the parties' pragmatic tactical assumptions in that case.

In sum, the 1969 Secretarial Order did not resolve the Reservation boundary dispute. The 1964 Congressional authorization expressly recognizes the existence of the dispute. Since issuance of the 1969 Secretarial Order – and with full knowledge of it -- the Supreme Court has opined multiple times that the dispute is not resolved, or has referenced it as not being resolved. *Aranson* did not reference the 1969 Secretarial Order, wholly contradicts it, and appears to definitely resolve the Reservation boundary dispute between California on one hand, and the United States and CRIT, on the other, in direct opposition to the terms of the 1969 Order. Accordingly, the 1969 Secretarial Order is not binding upon California, and no statutes of limitation have run, or are running, in relation to it.

**OPPOSITION TO PLAINTIFF'S ARGUMENTS**

**A. Defendant Is Not in Trespass and Subject to Ejectment**

Plaintiff claims that Defendant has committed a trespass on the Subject Lot. Yet the U.S. admits that Defendant entered the property though an Assignment of Permit with the BIA in 1979, just prior to the United States Supreme Court finding that "*we in no way intended that ex parte secretarial determinations of the boundary issues would constitute "final determinations" that could adversely affect the States…*". (Complaint Paragraph 17). Defendant has a right to claim ownership of the property improvements and retains rights to possession as afforded by the permit, even if null and void by PL88-302, and refusal of the United States to offer replacement BLM (or Bureau of Reclamation) leases. Plaintiff's knowingly false claims that Defendant has stated that the "Subject Property is not part of the Reservation" and "the Secretarial Order is invalid" are in violation of the False Claims Act. The motive behind Plaintiff's false claims is an apparent ploy to persuade the Court to invoke estoppel to justify a finding in favor of the trespass claim. But instead of trespass, the Court should find that Defendant has made

significant improvements to the Subject Lot and with occupancy for over 40 years, has rights to Adverse Possession under Color-Of-Title, 43 U.S.C. 1068.

1. Plaintiff's claims of trespass on "Indian Lands" are inapplicable because the boundary dispute has not been resolved in accordance with PL88-302. See Section III above. See also Section A.4 below.

2. Plaintiff makes another false claim that Defendant repeatedly claimed that the "Subject Property is not part of the Reservation". However, Plaintiff has not made any such claim and such language is nowhere in the Answer. This false claim leads to Plaintiff's argument that "a tenant in peaceful possession is estopped to question of the title of his landlord." But Plaintiff's argument here is unsupportable because (a) Defendant cannot be considered a tenant of the Tribes due to PL 88-302 and the unresolved controversy over the location of the boundary of the reservation, and (b) the landlord, the Secretary, does not have approval authority for such a lease for the same reasons. Therefore, the false claim is without merit, and estoppel based on that false claim is inapplicable.

Plaintiff cites *French v. Starr* supporting estoppel due to contract and by conduct. But the *French* estoppel ruling is inapplicable because (a) the matter considered by the court was tribal jurisdiction over a non-tribal member where the court gave "*deference to a tribal court's determination of its own jurisdiction*", and (b) the court concluded that French was "*challenging the Reservation boundary*". Here before this court, there is (a) no tribal court to provide "deference" and (b) there is no "challenge to the Reservation boundary" because that challenge has been confirmed by the United States Supreme Court, *Arizona v. California,* 460 U.S. 605, 636-37 (1983*)(Arizona II)*, *Arizona v. California,* 530 U.S. 392 (2000) (*Arizona III*), and *French v. Starr*, 2015 WL 12592104 ("*The Court recognizes that the issue of the location of the Reservation's boundary remains unresolved*"). Therefore,

such comparisons to *French* are either based upon a false premise and therefore without merit, or only serve to strengthen Defendant's position that the Court found the boundary dispute unresolved.

3. Plaintiff also attempts to again present the false claim that Defendant is attacking the 1969 Secretarial Order to make the case that such attack would be barred by the statute of limitations. Plaintiff also infers that the boundary dispute was resolved consistent with the Secretarial Order by the U.S. Supreme Court in *Arizona v. California, 460 U.S. 605, 636-37 (1983)* (citing Answer 15 ¶ 29, 30). Defendant reaffirms his position that *Arizona II* recognized the boundary dispute advanced by the State of California throughout the entire *Arizona* trilogy. Plaintiff states "the 1969 Secretarial Order is a final order, remains legally binding, and is not subject to Defendant's collateral attack". But here Defendant is not attacking the Secretarial Order. Instead, Defendant merely cites decisions by multiple courts that confirm the existing boundary dispute.

4. Plaintiff claims that *Arizona v. California* did not invalidate or determine that the Secretarial Order had no legal effect. Plaintiff then goes to great lengths to explain that the court did not resolve the boundary dispute which mysteriously makes the 1969 Secretarial Order "valid and final." Plaintiff goes even further off the rails by claiming that the court's consistent finding of a boundary dispute could not possibly be considered the "" "*controversy*" under Pub. L. No. 88-302, §5". By contrast, Defendant again cites the relevant portion of PL88-302 Section 5:

> *That the **authorization [to lease Indian lands] herein granted to the Secretary of the Interior** shall not extend to any lands lying west of the present course of the Colorado River and south of section 25 of township 2 south, range 23 east, San Bernardino base and meridian in California, and **shall not be construed to affect the resolution of any controversy over the location of the boundary of the Colorado river Reservation**: Provided further, That any of the described lands in California shall be subject to the provision of this Act when and if determined to be within the reservation.*

Emphasis added. The courts have clearly found that the controversy over the location of the Reservation western boundary (northern section) has never been resolved. Therefore, it is without doubt, the authorization to lease Indian lands granted to the Secretary of the Interior shall not extend to the disputed area. The matter is not complicated, nor is PL88-302 unclear. The application of PL88-302 only requires confirmation of the boundary controversy, making the validity of the Secretarial Order irrelevant.

**B. Defendant's Defenses are Not Meritless**

**1. Non-affirmative defenses**

All Defenses are Affirmative Defenses included in Defendant's Answer except the first and fifteenth.

**2. Affirmative Defenses**

(a) Plaintiff claims that there are no indispensable parties that need to be joined. Defendant disagrees as the Second Affirmative Defense may very well include the State of California as an indispensable party.

(b) Plaintiff claims that the eighth defense, proximate cause, is meritless. However, damages are instead owed to Defendant upon consideration of the U.S. failure to make leases available from the BLM or Bureau of Reclamation where Defendant could retain his constitutional rights which are unavailable under CRIT tribal jurisdiction. Therefore, proximate cause is indeed an applicable affirmative defense.

(c) Plaintiff asserts affirmative defenses fourth, eleventh, twelfth, and thirteenth cannot be raised because Plaintiff claims the disputed area is held in trust for the benefit of the tribes. Plaintiff adds: "*But these particular equitable defenses cannot be raised here because, as a matter of law, they do not apply to the United States when acting*

*in its sovereign capacity…this rule clearly applies when the United States seeks to protect title to land that it holds in trust for the benefit of tribes."*

However, trust status for the Reservation can only exist if the land has been determined to be within the boundaries of the Reservation. If truly the land was held in trust as claimed by Plaintiff, the Secretary would be authorized to approve leases, which authorization cannot exist due to PL88-302. Since the Secretary does not have authorization to approve leases, the land cannot be considered to be held in trust. Therefore, Defendant is entitled to cite these affirmative defenses.

(d) Plaintiff claims that the fifth, sixth, ninth, and fourteenth affirmative defenses are inapplicable to its claims of trespass and ejectment for unlawfully occupying and controlling real property ***held in trust*** *by the United States for CRIT without authorization.*

*"Contract defenses … are irrelevant…"*

However, trust status for the Reservation can only exist if the land has been determined to be within the boundaries of the Reservation. If truly the land was held in trust as claimed by Plaintiff, the Secretary would be authorized to approve leases, which authorization cannot exist due to PL88-302. Since the Secretary does not have authorization to approve leases, the land cannot be considered to be held in trust. Therefore, Defendant is entitled to cite these affirmative defenses.

(e) Plaintiff claims that the seventh defense of "good faith" is not a defense to federal common law trespass. But Plaintiff has characterized its trespass claim as based upon the land being on the Reservation, not common law, and is therefore

misapplied and irrelevant. Therefore, the seventh affirmative defense is indeed relevant and should be considered.

(f) Plaintiff claims that the tenth defense statute of limitations based upon 28 U.S. § 2415(a) is inapplicable for the trespass and ejectment claims, and that 28 U.S.C. § 2415(c) is appropriate.

> *"there is no statute of limitations 28 U.S.C. § 2415(c) ("Nothing herein shall be deemed to limit the time for bringing an action* ***to establish the … right of possession of real or personal property****.")*.

Defendant concurs that 28 U.S.C. § 2415(c) is the appropriate statute. Defendant also points out that Plaintiff has revealed its true motivation for filing this action against Defendant; i.e. "to establish the right of possession" of Lot 16, in spite of PL88-302.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." In ruling on a motion for judgment on the pleadings brought pursuant to Rule 12(c), "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550,)9th Cir. 1990) (internal citations omitted).*

## CONCLUSION

Defendant finds historical value in Public Law 88-302, and an appreciation of those wise Congressman in 1964 that were savvy enough to realize what an unelected federal bureaucracy can do with unbridled authority. In 1964, Congress was well aware of Secretary of Interior Stuart Udall, his long history in Congress representing the State of Arizona (and its Native population), and his brother Mo

who took his place in 1961. Under the political realities, Congress wisely included the provision in Section 5 to prevent abuse by an overreaching Secretary.

Now 60 years later, we not only have a federal department dedicated to Native American advocacy (Dept of the Interior, Bureau of Indian Affairs), we have an entire branch of the Attorney General's office dedicated to establishing preferential treatment for Native Americans at the expense of other American citizens under the auspiciousness of "equitable considerations". Whatever happened to "all men are created equal"?

Defendant is aware of some of his neighbors who are similarly situated with the United States Department of Justice under the Indian Resources Section now attempting to remove them from their homes and preventing them from filing for Adverse Possession by claiming that the disputed area is within the boundaries of the Reservation.

If the federal government were to abide by the various court decisions, it would take measures to transfer the disputed area back to BLM (or Bureau of Reclamation) control as before the Secretarial Order, recognizing that if the boundary were to be resolved in the Tribe's favor, it could simply transfer control to the BIA. Such action would restore U.S. Constitutional rights to the unfortunate residents who now have to live under the threat of tribal jurisdiction. See *French v. Starr,* No. CV-13-02153, 2015 WL 1252104 (D. Ariz. February 12, 215). It would also restore law enforcement by the Riverside County Sheriff who now refuses to enforce state law claiming criminal acts by CRIT are "civil" matters and the Sheriff cannot be forced to enforce the law due to the Tribes' sovereign immunity. See *West Bank Homeowners Association v. Riverside County Sheriff's Department: Sheriff Stanley Sniff*. It is time the federal government collectively, not some department whose charter is to advocate a particular element of the American citizenry, take action to bring sanity and equality to the situation within the disputed area.

For the foregoing reasons, Defendant requests that the Court deny this motion for partial judgment on the pleadings.

Respectfully submitted this 26th day of April, 2024.

STEVEN P. GOULD
Defendant *Pro Se*

*/s/ Steven P. Gould*
Steven P. Gould
*Gouldsteven05@gmail.com*
HCR 20, Box 1586
Blythe, California 92225

**CERTIFICATE OF SERVICE**
*United States of America v. Steven P. Gould*
USDC Case No. 5:23-cv-02295 FMO (SPx)

I am over the age of 18 and not a party to the within-entitled action. I reside in the City of Hemet, County of Riverside, State of California.

On the date set forth below, I served on all interested parties in this action the foregoing document described as: **DEFENDANT STEVEN P. GOULD'S RESPONSE TO MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS BY PLAINTIFF UNITED STATES OF AMERICA** by the following method:

| | |
|---|---|
| **Marisa J. Hazell**<br>U.S. Dept of Justice<br>Environment & Natural Resources<br>Indian Resources Section<br>999 18th St. South Terrace 370<br>Denver, CO 802023<br>Tel: (202) 532-3055<br>*Marisa.hazell@usdoj.gov*<br><br>**Laura Boyer**<br>U.S. Dept of Justice<br>Environment & Natural Resources<br>Indian Resources Section<br>P.O. Box 7611 – Ben Franklin Station<br>Washington, D.C. 20044-7611<br>T: (202) 353-8596<br>*Laura.boyer@usdoj.gov* | Attorneys for Plaintiff<br>*UNITED STATES OF AMERICA* |

**[ ]** **BY CM/ECF:** With the Clerk of the United States District Court of California using the CM/ECF System. The Court's CM/ECF System will send an e-mail notification of the foregoing filing to the parties and counsel of record who are registered with the Court's CM/ECF System.

**[X]** **BY EMAIL:** By emailing a true and correct copy of the document listed to the person(s) at the email address(es) set forth above.

**[X]** I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on April 26, 2024, at Hemet, California.

*/s/ Stacey Craun*